(No. 35690.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM SMITH, Plaintiff in Error.

*Opinion filed October 31, 1960.*

JULIUS L. SHERWIN, and THEODORE R. SHERWIN, both of Chicago, for plaintiff in error.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, and JIM D. KEEHNER, Assistant Attorneys General, and FRANCIS X. RILEY, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

On January 5, 1959, defendant, William Smith was indicted in Cook County for unlawful possession of narcotic drugs, to-wit: heroin, contrary to the statutes of the State of Illinois. Defendant pleaded not guilty, and on June 19, 1959, filed a motion to quash a search warrant and a petition to suppress the evidence obtained in the search. A hearing was held on the motion, and the motion was denied. The cause was then tried before the court, the defendant having waived a jury. Defendant was found guilty, his motions for new trial and in arrest of judgment were denied, and he was sentenced to the Illinois State Penitentiary for a term of not less than two years nor more than ten years. Defendant additionally received a suspended fine of one dollar. He now prosecutes his writ of error to this court asserting (1) that the trial court erred in overruling his motion to quash the search warrant, (2) that the search of his apartment was illegal, and (3) that the evidence failed to prove that he was in possession of narcotic drugs as alleged in the indictment.

On November 28, 1958, police officer George Sims, in the company of two other officers, served a search warrant upon defendant as he came out of his apartment at 555 East 43rd Street in Chicago. The search warrant directed the search of "apartment number B-2 of the building located at the address known as 555 East 43rd Street being used and occupied by: man named Willie Smith alias Silly Willie" wherein it was charged that narcotic drugs were being used, sold, possessed and concealed in violation of the Uniform Narcotic Drug Act. Officer Sims had been upon the premises earlier on the same date and noted two apartment doors on the second floor marked 2-A and 2-B, 2-A being the east apartment and 2-B the west. Defendant acknowledged that it was his apartment from which he emerged, and the officers entered and began their search.

While searching, one of the officers discovered a locked closet door and obtained the key thereto from defendant. In the closet the officers found a blue denim jacket having two brown envelopes in the pocket. The contents of the envelopes was field tested and found to be heroin. Defendant denied knowledge of the drugs, but upon learning that if he persisted in his denial, both he and his wife would have to be arrested and someone called to care for their child, he admitted it was his "stuff." He claimed to have purchased it from "Cuz" Bill Langford. Defendant was arrested, and he then agreed to co-operate in apprehending "Cuz". He called "Cuz" and made initial arrangements for another purchase.

Five days later officer Sims returned to the apartment and found that defendant's apartment door bore a crude "W" while all other apartments were labeled "A" or "B" on each floor.

At the hearing on the motion and petition defendant testified that he lived in apartment 2-W at 555 East 43rd Street, and paid his rentals to A. E. Gordon & Sons. He exhibited six rent receipts from said firm showing receipt

of rentals from defendant for apartment 2-W at that address, and he introduced a photograph, which he took in the presence of his wife and attorney, showing his apartment door five days after his arrest. The photo showed a "W" on the door.

Defendant confirmed that the officers met him at his apartment door and then searched his apartment. One of the officers came into the front room with a jacket which defendant told them belonged to his wife's cousin. The officers showed him a package which he claimed was in the jacket.

Defendant's wife also claimed they resided in apartment 2-W, that her husband did not put the "W" on the door, and that she did not know the number of the other apartment on their floor.

Alexander Gordon testified as to the rent receipts issued by his office, and stated they were issued for the apartment on second floor west at the address there stated. He did not know what numbers were on the apartment doors in the building at 555 East 43rd Street, and merely set up and used the east or west designations for his own convenience.

Upon the trial of the cause, substantially the same evidence was presented, with the testimony of officer Sims being corroborated and expanded by officer Bingham, one of the officers present at the search and the officer who performed the field test for narcotics.

Defendant first asserts that the court erred in denying the motion to quash the search warrant. That motion asserted the warrant was insufficient in that it failed to describe the premises to be searched with particularity, in that there were two separate apartments on the second floor of the building at 555 East 43rd Street, and the defendant, William Smith, occupied apartment 2-W, whereas the search warrant specified apartment B-2. Defendant also petitioned to suppress the evidence obtained in the search for the reason that the search was illegal, without a valid

warrant, and at a time when defendant was not committing a criminal act.

Defendant argues that the search warrant described an apartment number different from that in which defendant resided, and further failed to sufficiently describe the premises themselves.

While defendant asserts that his apartment was numbered 2-W on the door at all times, nevertheless the testimony of the officers was that the numbers on the two apartments on the second floor were 2-A and 2-B and that defendant emerged from the door labeled 2-B, acknowledged that the apartment was his, and it was that apartment which was searched. Officer Sims saw no "W" on any door on the day of the search. After the first hearing on the motion and the introduction of the photo of the door, which was taken five days after the arrest, Sims and officers Bingham and Bryson returned to the apartment house. The door to defendant's apartment was marked with only a "W". He then inspected other apartments and found them marked with "A" and "B", the east apartment being marked "A".

Upon this record it obviously appeared to the trial court that the apartment was marked 2-B on the date of the search. The court heard and observed the witnesses, and could best ascertain where the truth lay.

A search warrant must contain a description of the premises to be searched so specifically and accurately as to avoid any unnecessary or unauthorized invasion of the right of security. It should identify the premises in such manner as to leave the officer no doubt and no discretion as to the premises to be searched. (*People* v. *Martens,* 338 Ill. 170; *People* v. *Bishop,* 225 Ill. App. 610.) Here the apartment was designated as B-2 and the apartment which we have found then bore the letter "B" and the number "2" was searched. Moreover the correct street address of the apartment building, and the name and alias of the occupant were specified. The realtor who rented the building stated that

one William Smith resided in the building in the apartment on second floor west. Defendant emerged from the apartment later searched, acknowledged that he was Willie Smith and that it was his apartment.

Our Federal courts have held that a description in a search warrant is satisfactory if it gives the address of an apartment building and the name of the person who occupies the apartment. Such a description is sufficient to meet the requirements of the United States constitution.

Clearly this search warrant accurately and sufficiently described the premises to be searched, the search conducted pursuant to the authority of the warrant was proper and legal, and the evidence obtained in that search was properly admitted. The court did not err in denying the motion to quash the search warrant and the petition to suppress evidence.

Finally defendant contends that the evidence fails to prove him guilty of the charge of possession of narcotic drugs, for the reason that there is no sufficient proof of his exclusive possession of drugs. The officers discovered a jacket in a locked closet in defendant's apartment. In the pocket of that jacket were two brown envelopes found to contain heroin. Defendant insists that the jacket belonged to his wife's cousin, who had resided there, was no longer residing there, had left the jacket, and that its contents belonged to the same person.

However, the officers testified that the closet was locked and that the key was obtained from defendant. Defendant denied that the closet was locked, that he gave him a key, or that the heroin was his. However, when the officers told him that they would have to arrest his wife also, defendant admitted the "stuff" was his and where he purchased it, but later claimed he did so only because the officers threatened his wife and baby.

Knowledge of the possession of narcotics is essential to the proof of the crime of the possession thereof. Such

knowledge may be proved by evidence of acts, declarations or conduct of the accused from which the inference may be fairly drawn that he knew of the existence of the narcotics at the place where they were found. (*People* v. *Mack,* 12 Ill.2d 151.) The officers testified that the narcotics were found in a locked clothes closet, to which defendant had the key. Certainly it is unusual to lock such a storage place. Moreover, defendant admitted the ownership and his purchase thereof.

Defendant now disputes these facts and circumstances, but again the trial court was better able to discern the truth than we are.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*