*In re* ESTATE OF BESSIE ROBERTS.—(THE FIRST NATIONAL BANK OF
MURPHYSBORO, Plaintiff-Appellee, *v.* RONDELL GRAMMER,
Defendant-Appellant.)

Fifth District    No. 80-261

Opinion filed August 25, 1981.

Rex G. Burke, of Murphysboro, for appellant.

Don E. Prosser, of Kimmel, Huffman, Prosser & Kimmel, Ltd., of Carbondale, for appellee.

Mr. PRESIDING JUSTICE KASSERMAN delivered the opinion of the court:

On May 3, 1977, Bessie Roberts entered into a trust agreement and named Rondell Grammer, defendant, as trustee. The agreement provided in pertinent part that:

"*SECOND*: During the lifetime of the Settlor, the Trustee shall pay the net income to the Settlor, or for the benefit of the Settlor, in quarterly installments, or shall deposit the net income to any account Settlor may designate. The Trustee shall pay to the Settlor such sums from the principal of the trust as the Settlor may direct in writing delivered to the trustee or as the trustee shall deem to be necessary or advisable for the support, maintenance, comfort, welfare, and medical, dental, hospital or similar care for the Settlor.

*THIRD*: If the Settlor becomes incapacitated or ill, or if in the opinion of the Trustee it is more convenient for the Settlor, the Trustee during any such period shall pay, use and expend the net

income and so much of the principal as may be necessary, in the Trustee's discretion, to provide for the support, comfort, welfare, and medical, dental, hospital or similar care for the Settlor.

In determining whether to act or cease acting under this clause, the Trustee shall consult with DR. BORGSMILLER, of Murphysboro, Illinois, otherwise the physician then attending Settlor. The Trustee in making this determination under this clause may conclusively rely on a written medical opinion issued by a licensed medical doctor.

The Trustee is also authorized to arrange for convalescent care, extended care or nursing home care if the Trustee deems any such type of care is necessary and advisable for the support, comfort, maintenance, welfare, medical, dental, hospital or similar care for the Settlor.

In providing nusing [sic] home or permanent care, the Trustee shall require that any establishment, agency, or facility providing such care provide:

(a) Reasonable comfort and maintenance at the standard of living which the Settlor had maintained up to the time of admission for Settlor.

(b) Medical and nursing care of adequate quality, which covers all conditions of physical and mental infirmities attendant upon old age.

(c) The best care and comfort in all situations relating to health, medical, dental, hospital, nursing expenses and expenses of invalidism (except major hospitalization) as the Settlor would have provided.

Any income not paid for by the above purposes shall be added to the principal of the trust."

Bessie Roberts was declared incompetent by order of the Circuit Court of Jackson County, entered on February 22, 1978. The order appointed the First National Bank of Murphysboro (hereinafter the Bank) as conservator of the estate of Bessie Roberts and Rondell Grammer, the trustee, as conservator of her person.

On November 15, 1979, the Bank filed a complaint, requesting that Grammer be required (1) to account for all assets of the trust and for all transactions concerning the trust after February 22, 1978, and (2) to pay the Bank all income of the trust when received. It was never contended that Grammer had been derelict in his duties as trustee. Instead, the Bank alleged that it made these requests in order to fulfill its duties as conservator of the estate of Bessie Roberts.

The trial court by order entered on June 6, 1980, stated in pertinent part:

"(5) Once this Court appointed Plaintiff, the First National Bank of Murphysboro, as Conservator of the estate of the Settlor, the Conservator was charged with the duty to manage and preserve the estate of the incompetent. That duty included the power to do that which is necessary for the proper performance of that duty subject to Court direction. Since the Settlor retained the power of direction as to the income and principal of the Trust during her lifetime, that power was transferred to the Plaintiff as Conservator of her estate and the provisions of Article 3 of the Trust were no longer applicable. * * *"

The relief requested by the Bank was granted, and from that order defendant Grammer appeals.

The first issue raised by defendant is whether a court may order the trustee of an *inter vivos* trust to account to and pay trust income to the conservator of the estate of a settlor-beneficiary who is now incompetent when provision for the incompetency of the beneficiary was made by an unambiguous portion of the trust.

The general clauses of the trust require the trustee to pay the income of the trust directly to the beneficiary. However, the third article gives the trustee the discretion to secure medical attention and living quarters for the beneficiary. It was to come into operation when the beneficiary became unable to care for herself and was designed to insure that, in her infirmity, the beneficiary would be cared for by someone of her own choosing and according to her own instructions. Those instructions, while giving the trustee broad powers, are quite explicit. Article three directs the trustee to obtain institutional care "at the standard of living which the Settlor had maintained" up to the time of her admission, and to procure "the best care and comfort in all situations relating to health, medical, dental, hospital, nursing expenses and expenses of invalidism (except major hospitalization) as the Settlor would have provided." Bessie Roberts clearly contemplated that she would be looked after by someone familiar with her needs, tastes and habits. She obviously was of the opinion that defendant was that person.

■■ For this reason, we conclude that the incompetency of Bessie Roberts did not operate to revoke her *inter vivos* trust. Instead, her disability provides compelling justification to keep the trust intact. A contrary holding would frustrate the plain intent of the settlor, contrary to the most fundamental tenet of trust interpretation and the provisions of section 3(1) of the Trusts and Trustees Act (Ill. Rev. Stat. 1979, ch. 148, par. 103(1)). *Cf. Ford v. Newman* (1979), 77 Ill. 2d 335, 396 N.E.2d 539; *Kavanaugh v. Estate of Dobrowolski* (1980), 86 Ill. App. 3d 33, 407 N.E.2d 856.

■■ Defendant argues that the portion of the order of the trial court

specifying that "the provisions of Article 3 of the trust were no longer applicable" indicated the court's intention to revoke all of his authority under the trust. When read out of context, such is the obvious import of the specified portion of the order. However, we believe that the trial court recognized the justification for retaining a portion of the third clause of the trust when it retained Grammer as the individual to provide for the personal needs of the incompetent. In any event, we conclude that those provisions of the third clause of the settlor's trust pertaining to her personal support, comfort, welfare, and medical, dental, hospital or similar care remain in full force and effect.

The Bank argues that the issue presented by this case has been decided by *Bradshaw v. Lucas* (1919), 214 Ill. App. 218. In *Bradshaw*, Andrew J. Bradshaw created a spendthrift trust for his son, William C. Bradshaw, naming as trustee Oscar J. Lucas. After Andrew's death, William was declared incompetent and Leslie W. Benson was appointed his conservator. Benson sued to require an accounting from Lucas and to force Lucas to pay the income of the trust to him rather than to William Bradshaw. The trial court denied this relief, but this decision was reversed by the appellate court.

It is our opinion that *Bradshaw* is dispositive of the first issue raised by this appeal: whether the trial court erred in ordering all net income of Ms. Roberts' trust paid to the conservator of her estate. There, the trust created by Andrew J. Bradshaw provided that Oscar Lucas

> "* * * should have possession of the trust property and receive the rents therefrom and other income accruing thereon 'and to pay over the same to William C. Bradshaw in such manner as the said Oscar J. Lucas shall deem most efficient and to the best interests of the said William C. Bradshaw.' By the terms of that declaration of trust, Lucas was to pay over to William C. Bradshaw in all events all of the rents and income from the trust estate." (214 Ill. App. 218, 222.)

Lucas was directed to pay the income to William and had no obligation to make arrangements for his care. Also, no provision was made in the Bradshaw trust for the incompetency of William.

■■ In contrast, while the trust in the case at bar generally required the payment of the net income of the trust property directly to the settlor, the third article vested the trustee with discretion as to the care of the settlor in case she became physically or mentally incapacitated. Here, the trustee is not to act merely as a conduit for the income; he is instead to be an active trustee. The trial court correctly recognized that both the terms of the trust and relevant case law furnish no need for the trustee to relinquish his obligation to provide suitable care and support for the settlor.

No challenge is made to the appointment of the Bank of Murphysboro as conservator of the estate of Ms. Roberts, and we accept this action as proper. In this regard, we note that section 4.20(b) of the Trusts and Trustees Act recognizes the possibility of there being a division of the authority to provide care and maintenance for a settlor who is incompetent and the authority to manage his estate. There, trustees are authorized to make distribution of income and discretionary amounts of principal to the duly appointed guardian or conservator of a beneficiary who is under legal disability. Ill. Rev. Stat. 1979, ch. 148, par. 104.20(b).

■■ We agree with the Bank's assertion that it is in the best interests of the settlor, and necessary for the proper management of her estate, that the conservator of her estate control the income of the trust in order to monitor the activities of the trustee. Under section 11a—17 of the Probate Act of 1975 (Ill. Rev. Stat. 1979, ch. 110½, par. 11a—17), Grammer, as guardian of the person of Bessie Roberts, is no less subject to court supervision than is the guardian of her estate. Further, as trustee under Ms. Roberts' trust, Grammer stands in a fiduciary relationship to the beneficiary, and if he abuses the discretion vested in him by the trust, he may be removed as trustee and a successor trustee appointed. (*Chicago Title & Trust Co. v. Chief Wash Co.* (1938), 368 Ill. 146, 13 N.E.2d 153.) However, in the absence of a competent beneficiary, there is no one to scrutinize Grammer's activities as trustee.

■■ The active trustee in the case at bar has not been forced to relinquish his role as trustee because he has been ordered to pay trust income to the conservator of the estate of the beneficiary. In fact, as we have stated, the order to make such payment to the beneficiary's conservator is contemplated by the provisions of section 4.20(b) of the Trusts and Trustees Act (Ill. Rev. Stat. 1979, ch. 148, par. 104.20(b)). Therefore, that portion of the order of the trial court requiring the trustee to account to the Bank is affirmed.

The final issue raised by defendant is whether the trial court erred in ordering plaintiff's attorney's fees and costs to be paid from accumulated trust income.

■■ Plaintiff urges that its attorney's fees and expenses should be paid by the trust estate under the provisions of section 27—2 of the Probate Act of 1975 (Ill. Rev. Stat. 1979, ch. 110½, par. 27—2) because it was required to employ counsel and incur expenses as representative of the incompetent. We agree. Section 27—2 of the Probate Act of 1975 provides that the attorney for a representative is entitled to a reasonable compensation for his services. Further, since we have held that the order of the trial court regarding the payment of the net income of the trust estate to plaintiff was proper, we conclude that the trial court did not err in ordering the

payment of plaintiff's attorney's fees and expenses involved in this litigation to be paid from accumulated trust income.

For the foregoing reasons, the judgment of the Circuit Court of Jackson County is affirmed.

Affirmed.

KARNS and WELCH, JJ., concur.