THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOEL McNEELY, Defendant-Appellant.

Fourth District   No. 16935

Opinion filed August 31, 1981.

Charles E. McNeely, of Thomson & McNeely, P. C., of Jacksonville, for appellant.

Edwin R. Parkinson, State's Attorney, of Jacksonville (Robert E. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

Following a bench trial, defendant, Joel McNeely, was convicted of the unlawful possession of methaqualone, a controlled substance (Ill. Rev. Stat. 1979, ch. 56½, par. 1402(b)), speeding, and illegal transportation of alcohol. For the offense of unlawful possession of a controlled substance, he was sentenced under the first offender provision (Ill. Rev. Stat. 1979, ch. 56½, par. 1410) to 2½ years' probation conditioned upon payment of a fine in the sum of $1,250 and costs. He was fined a total of $80 for the other offenses.

On appeal, the defendant contends (1) that he was not proved guilty beyond a reasonable doubt of possession of methaqualone, (2) that the State failed to prove that methaqualone had a depressant effect upon the central nervous system, and (3) that he was denied a fair trial because the State submitted a memorandum of law which referred to facts not in evidence and which commented upon the defendant's failure to testify. We affirm.

The sole evidence of the matters in dispute came from the testimony of Lieutenant Evans of the South Jacksonville police. He testified to the following sequence of events. In the early morning hours of August 3, 1980, he timed an automobile driven by defendant to be traveling at a speed of 50 miles per hour while proceeding in a 35 mph zone. Evans signaled the defendant to turn the vehicle to the side of the road and stop. When Evans shined the spotlight of his car from the driver's side into the rear of the vehicle, he observed both the driver and his passenger, Simmons, suddenly bend over, for three to five seconds, as if they were stuffing something underneath the front seat. The defendant then got out of his vehicle, approached the police car and furnished the officer with his

driver's license. On cross-examination, Evans was impeached by his statement at a pretrial hearing wherein he stated that Simmons bent over but the defendant did not.

The lieutenant's testimony continued with the following explanation. After examining the license, he went to the passenger's side of defendant's vehicle and, with the aid of a flashlight, looked into the vehicle through a window. He observed what appeared to be an open can of beer on the floorboard between the passenger's legs. Next, the passenger, Richmond H. Simmons, got out of the vehicle. As he made his exit, several items fell out upon the ground. These included a small piece of plastic bag tied in a knot, a piece of paper, a small pipe, and some capsules. A further search of the defendant's vehicle revealed an open beer can on the floor of the passenger's side and another open can stuffed between the two bucket seats. A few more empty cans and a full, closed beer can were found on the driver's side of the floor.

Lieutenant Evans testified that, as he stood outside of defendant's vehicle on the passenger's side, he saw a plastic bag protruding from underneath the front seat on the passenger's side. He said that, on examination, the bag was found to contain two plastic vials with red capsules inside and a round plastic margarine cup with a white powdery substance inside. The parties do not dispute that the containers were shown to contain methaqualone.

■■ Section 402 of the Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1402), which defendant was charged with violating, provides in pertinent part:

> "Except as otherwise authorized by this Act, it is unlawful for any person knowingly to possess a controlled substance."

Defendant asserts Evans' testimony failed to make sufficient showing of defendant's possession of containers of methaqualone within the meaning of section 402. Under the provisions of statutes prohibiting possession of contraband, constructive possession by the accused is generally accepted to be a sufficient possession to constitute a violation.

> "We have held that the actual physical personal possession of narcotics is not required and that possession may be constructive as well as actual. (*People v. Mack*, 12 Ill. 2d 151.) To sustain a conviction on the basis of constructive possession, it must be shown that the defendant, although not having personal physical dominion, has the intent and capability to maintain control and possession. (*People v. Fox*, 24 Ill. 2d 581.)" *People v. Holt* (1963), 28 Ill. 2d 30, 32-33, 190 N.E.2d 797, *cert. denied* (1963), 375 U.S. 866, 11 L. Ed. 2d 93, 84 S. Ct. 138.

In addition to having the intent and capability to maintain the control and possession of the contraband, the accused must know of the presence

of the contraband (*People v. Bell* (1972), 53 Ill. 2d 122, 290 N.E.2d 214), but the knowledge may be proved by inferences from circumstantial evidence. (*Bell.*) For constructive possession to be proved, the accused must, at least, be shown to have exclusive control of the area of the premises where the items illegally possessed were situated. *People v. Mack* (1957), 12 Ill. 2d 151, 145 N.E.2d 609.

■■ Here, the methaqualone was in a vehicle driven by the defendant. Only one other person was in this vehicle, so the defendant had the opportunity to observe and be cognizant of the behavior of his passenger. We find that, because the defendant was the driver of the vehicle, and because he had merely a lone passenger, defendant had immediate and exclusive control of the inside of the automobile.

■■ Although Lieutenant Evans' testimony was impeached by his prior inconsistent statement that only the passenger bent over when Evans shined his spotlight into defendant's vehicle, the jury could have believed his trial testimony that both men bent over. If so, this would be strong circumstantial evidence of defendant's attempting to stuff certain items under the seat because he knew of their illicit nature. Moreover, even if defendant did not bend over, Evans' testimony indicated that the bag, after it was partially pushed under the seat, was visible even from the outside. Other circumstances indicated defendant's knowledge that the car contained contraband, *i.e.*, (1) Evans' testimony that when the passenger got out of the vehicle, capsules fell from his person to the ground, and (2) evidence that the defendant was driving with excessive speed. Pills which could have spilled were likely to have been in a position visible to defendant and his excessive speed made more likely that he was aware he was carrying contraband. We consider the circumstantial evidence, *in toto*, to have been sufficient for the court to have concluded beyond a reasonable doubt that defendant had knowledge of the nature of the substance in the containers.

The defendant relies heavily upon our decision in *People v. Day* (1977), 51 Ill. App. 3d 916, 366 N.E.2d 895. In *Day*, police officers stopped a car driven and owned by the defendant which contained six other passengers. The officers found a large grocery bag containing cannabis on the floor of the front seat beneath the legs of a passenger. This passenger was seated next to the defendant in the middle of the front seat. We found insufficient evidence to establish that the defendant exercised any sort of control over the grocery sack of marijuana found on the floor.

Here, on the other hand, only one passenger was in the car and the container of the contraband was in plain view, adjacent to the driver. Thus, the driver had greater knowledge of and control over what occurred in the interior of the vehicle. Unlike in *Day*, the driver was traveling at an excessive speed, and testimony was presented that when

stopped, he made a movement indicating an attempt to shove something, in the area of the vials, under the seat. We deem these differences to be significant.

■■ As further lack of proof of exclusive control, the defendant asserts that his ownership of the vehicle was never proved. We find it unnecessary to address this statement because it is control, not ownership, that is dispositive here. Ownership can indicate control, but is not the only manifestation of control. It is enough that the defendant was the driver of the vehicle. He had control of the keys and could refuse to transport his passenger if the passenger's possessions or behavior did not meet with his satisfaction.

■■ As defendant conceded at oral argument, his claim that the State failed to prove the effects of methaqualone on the central nervous system is controlled by our decision in *People v. Bolden* (1978), 62 Ill. App. 3d 1009, 379 N.E.2d 912. There, as here, the context of the statute is such that the possession of any amount of the controlled substance constitutes an offense. The quantity need not be enough to produce a depressing effect. The validity of the classification is not an element of the proof of the offense. Rather, it must be raised and proved by the accused as in *People v. McCarty* (1981), 93 Ill. App. 3d 898, 418 N.E.2d 26.

■■ The judge could have concluded properly that the defendant's guilt of unlawful possession of methaqualone was proved beyond a reasonable doubt.

■■ Defendant's final claim concerns a memorandum of law submitted by the State to the trial judge during trial. Because of its prejudicial nature, defendant claims its submission deprived him of a fair trial. It referred to testimony, unfavorable to defendant, given by the passenger Simmons at the latter's separate trial and also commented upon defendant's failure to testify in the instant case. However, trial judges often learn of matter which cannot be considered in making a factual determination but which is unfavorable to the defendant who is on trial before them. The defendant's failure to testify is always obvious. Commendably, the trial judge recited into the record that he was not considering these improper matters. The record gives us no reason to doubt the accuracy of the recitation. No error resulted from the memorandum.

We affirm.

Affirmed.

WEBBER and LONDRIGAN, JJ., concur.