THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL B. WHALEN, Defendant-Appellant.
Fourth District   No. 4—85—0676

Opinion filed June 27, 1986.

Daniel D. Yuhas and Jonathan Haile, both of State Appellate Defender's Office, of Springfield, for appellant.

Michael R. Roseberry, Special Prosecutor, of Pittsfield (Kenneth R. Boyle, Robert J. Biderman, and Michael Blazicek, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MORTHLAND delivered the opinion of the court:

Defendant, Michael Barry Whalen, along with codefendant Todd Grover Fischer, was indicted for the offense of unlawful possession of cannabis, more than 30 grams but not more than 500 grams. (Ill. Rev. Stat. 1983, ch. 56½, par. 704(d).) The cause was consolidated for bench trial with Pike County case Nos. 84—TR—1557 and 1558, driving under the influence of intoxicating liquor and driving in the wrong lane, against defendant Whalen arising from the same incident. The trial court found the defendants guilty of the offense of unlawful possession of cannabis, and dismissed the other charges against defendant Whalen. Defendant Fischer was sentenced to 24 months' probation and ordered to pay costs. Defendant Whalen was sentenced to two years' imprisonment and ordered to pay a fine of $210 based on the street value of the cannabis, a fine of $20 pursuant to the Violent Crime Victims Assistance Act (Ill. Rev. Stat. 1985, ch. 70, par. 501 *et seq.*), and ordered to pay costs. Defendant Whalen appeals from the judgment of the circuit court of Pike County. We affirm.

The single issue on appeal is whether defendant Whalen was proved guilty beyond a reasonable doubt of the offense of unlawful possession of cannabis. Defendant Whalen argues that the State failed to prove that he was in constructive possession of the cannabis.

According to the testimony adduced at trial, Whalen was driving

a yellow station wagon which was stopped shortly before 3:30 p.m. on October 6, 1984, for a traffic violation. Fischer, in the passenger seat, was the only other occupant of the car and carried no identification. The Michigan license plates on the station wagon were registered to Fischer's mother, and Fischer told officers at the scene that he had borrowed the car from his mother's driveway. The defendants stated that they were en route from Michigan to Missouri to see Fischer's father. The car was stopped after weaving from side to side in its lane and crossing the center line into the lane for oncoming traffic several times. Officers testified that Whalen smelled strongly of alcohol.

Dennis Jennings, Pittsfield police officer, first stopped the car in which the defendants were travelling and radioed for assistance. After the defendants were secured outside the car, Jennings looked inside for open liquor. In addition to the empty beer containers, Jennings observed a green, leafy substance and seeds strewn about the center floorboard and passenger side of the floorboard, as well as on the bench-type front seat of the car.

Deputy Yelliott testified that he had been called to assist Jennings. He stated that he and Jennings made a visual search of the vehicle before Officer Leonard arrived. He testified he had observed some green, leafy material and seeds which he believed to be marijuana in the front area of the car, on both the passenger and driver's sides, on the floor and in the cracks of the front seat.

Trooper Leonard testified that he arrived at the scene to provide assistance to the city officer. He testified that when he approached the car, while the defendants were secured behind it, he smelled the "smoke smell given off from the marijuana" when he went to the driver's door and was looking in. He observed a green, leafy substance and seeds scattered across the front seat of the car in the grooves on the seat, as well as randomly on the floorboard. He looked under the front seat and observed nothing. Leonard corroborated the testimony of Jennings and Yelliott that the back of the car contained fishing and archery equipment, bags of clothes and other items. He pulled a green Army bag from inside the rear deck of the station wagon, in the area for the spare tire. The bag held a paper bag of cannabis. Although the deck area was dusty from accumulation, the Army bag was clean.

Defendants were taken to the Pike County sheriff's office, the station wagon was secured and towed to the Pittsfield city police building, and Jennings and Leonard proceeded to the Illini Community Hospital where they weighed the contents of the cannabis from the Army bag at 204 grams.

Larry Hood, crime scene technician for the Department of Law Enforcement, testified that he processed the station wagon which had been driven by Whalen. He recovered .2 grams of green leafy material, seeds, and a partially burnt marijuana cigarette or "roach." The roach, about one-half inch long and partially flat, was found to the immediate right of the hump on the floorboard. Hood also recovered what is commonly known as a "roach clip" from the center portion between the two sun visors. He observed what appeared to be crumpled leaves on the front seat of the car but did not collect any. He testified that the interior of the vehicle was somewhat soiled and corroborated testimony of the officers that the cargo area of the station wagon was a mess, containing personal items from clothing to fishing equipment.

The State rested.

The defense presented the testimony of defendant Fischer. Fischer testified that he resided in Michigan and had decided to visit his father in Missouri. Early in the morning of October 6, 1984, he took a set of Ford keys from the kitchen table at his mother's house, removed the license plate from his mother's 1974 Firebird, put it on a yellow station wagon which had been sitting in her driveway for about a week, and picked up Whalen. He did not know who the station wagon belonged to or who had used it prior to that time. He testified that neither he nor Whalen put the green Army bag in the wheel well of the car. Asked whether Whalen owned a green Army bag like the one found in the wheel well, Fischer answered, "No, not like that." In detailing the gear which he and Whalen put in the cargo area of the station wagon, he gave the following answers:

"Q. [by Prosecutor] Did anybody have any Army bags?

A. [by defendant Fischer] I think Mike had a couple on top, clothes and that in them.

Q. With what?

A. Clothes in them.

Q. What kind of Army bags were they?

A. About that long (indicating). He had duffle bags. I think there was one."

Fischer testified that when he decided to take the station wagon, there was nothing in the back area of it but a piece of carpeting and everything that was put in on top belonged to him or to Whalen. Fischer said that he had not taken the Firebird because his mother needed it. He testified that once in the car he did not notice the marijuana on the floorboard or the seat, did not see the cigarette butt or roach on the front floorboard, and did not see the roach clip on the

center area between the sun visors. He had observed Whalen drink more than six beers en route, but said that Whalen drank the beers in Michigan and Indiana, not in Illinois.

A human hair found inside the Army bag did not match the hair of either defendant. Defendant Whalen did not testify.

At the conclusion of the evidence, the trial judge found the defendants guilty of unlawful possession of cannabis, stating that the testimony indicated a vehicle occupied by two people on a trip, with all of the gear in the back of the vehicle belonging to the defendants, an officer smelling marijuana in the car, along with evidence of marijuana seeds and some leafy residue, a so-called roach and roach clip, and—in a recess in the back of the station wagon—an Army bag with a paper bag in it containing marijuana.

■■ The controlling Illinois law on unlawful possession and the doctrine of constructive possession is well established. In order to support a conviction for unlawful possession of cannabis, the State must establish knowledge on the part of the defendant of the presence of cannabis and must also establish that the cannabis was in the immediate and exclusive control of the defendant. *People v. Embry* (1960), 20 Ill. 2d 331, 334, 169 N.E.2d 767, 768.

■ The element of knowledge is seldom susceptible of direct proof. (*People v. Embry* (1960), 20 Ill. 2d 331, 169 N.E.2d 767.) In *People v. Nettles* (1961), 23 Ill. 2d 306, 308-09, 178 N.E.2d 361, 363, *cert. denied* (1962), 369 U.S. 853, 8 L. Ed. 2d 12, 82 S. Ct. 939, the court stated that where narcotics are found on the premises under the control of the defendant, this fact, in and of itself, gives rise to an inference of knowledge and possession by him which may be sufficient to sustain a conviction for unlawful possession of narcotics, absent other facts and circumstances which might leave in the mind of the trier of fact a reasonable doubt as to his guilt. This court recently reviewed the relevant authorities in *People v. Burke* (1985), 136 Ill. App. 3d 593, 599-600, 483 N.E.2d 674, 679-80, wherein it was stated:

> "To sustain a charge of *unlawful possession*, the State is required to prove (1) knowledge of the possession of the substance, and (2) that it was in defendant's control. (*People v. Bell* (1972), 53 Ill. 2d 122, 126, 290 N.E.2d 214, 216.) The requisite knowledge may be proved by evidence of acts, declarations, or conduct from which it may fairly be inferred that the accused knew of the existence of the narcotics at the place they were found. (*People v. Bell* (1972), 53 Ill. 2d 122, 290 N.E.2d 214; *People v. Smith* (1960), 20 Ill. 2d 345, 350-51, 169 N.E.2d 777, 781.) Not only may possession of drugs be constructive

(see *People v. Mack* (1957), 12 Ill. 2d 151, 161-63, 145 N.E.2d 609, 612-13; *People v. Brownstein* (1982), 105 Ill. App. 3d 459, 465-66, 434 N.E.2d 505, 509-10; *People v. Luetkemeyer* (1979), 74 Ill. App. 3d 708, 713, 393 N.E.2d 117, 121), but the rule that possession must be exclusive does not mean that possession may not be joint (see *People v. Embry* (1960), 20 Ill. 2d 331, 169 N.E.2d 767; *People v. Kline* (1976), 41 Ill. App. 3d 261, 354 N.E.2d 46). See generally Annot., *Conviction of possession of illicit drugs found in premises of which defendant was in nonexclusive possession*, 56 A.L.R.3d 949 (1974); 9 Unif. Laws Annot. sec. 401 and notes thereto (1979).

*** Moreover, it is noted that several Illinois cases involving contraband found in the accused's car have found that that circumstance, and the fact that it was located in places where he 'could or should have been aware' of it, were sufficient evidence of his knowledge and control in order to sustain convictions for unlawful possession of the contraband drugs. See *People v. Davis* (1965), 33 Ill. 2d 134, 139, 210 N.E.2d 530, 532; *People v. Evans* (1979), 80 Ill. App. 3d 87, 398 N.E.2d 1219; see also *Barnhart v. State* (Okla. Crim. App. 1977), 559 P.2d 451, 456-57."

In *People v. Davis* (1965), 33 Ill. 2d 134, 210 N.E.2d 530, the defendant was stopped for a traffic violation. As the defendant got out of his car to produce his driver's license, the officer noticed a tin-foil packet in plain sight on the floor of the car. The officer picked up the packet, cracked it open, and found that it contained white powder. It was only then that the defendant was placed under arrest and the car searched and another tin-foil packet found in the crack of the front seat. Our supreme court in *Davis* rejected the defendant's allegation that unlawful possession was not proved beyond a reasonable doubt, based on inference that the defendant had both knowledge and control of the narcotics. The trial court here similarly drew the requisite inferences of knowledge and possession to sustain a conviction for unlawful possession of cannabis and that determination, within the province of the trier of fact (*People v. Embry* (1960), 20 Ill. 2d 331, 169 N.E.2d 767; *People v. Mack* (1957), 12 Ill. 2d 151, 160, 145 N.E.2d 609, 613), is not easily overturned on review.

As to the control element of unlawful possession, as this court stated in *People v. McNeely* (1981), 99 Ill. App. 3d 1021, 1025, 426 N.E.2d 296, 299, it is control of a vehicle, not ownership, that is pertinent to proving exclusive control of the area of the premises where the items illegally possessed were situated. In *McNeely*, this court

stated:

> "Ownership can indicate control, but it is not the only manifestation of control. It is enough that the defendant was the driver of the vehicle. He had control of the keys and could refuse to transport his passenger if the passenger's possessions or behavior did not meet with his satisfaction." 99 Ill. App. 3d 1021, 1025, 426 N.E.2d 269, 299.

■ Defendant relies on such cases as *People v. Millis* (1969), 116 Ill. App. 2d 283, 252 N.E.2d 395, *People v. Howard* (1975), 29 Ill. App. 3d 387, 330 N.E.2d 262, and *People v. Day* (1977), 51 Ill. App. 3d 916, 366 N.E.2d 895. In each of these cases this court reversed the defendant's conviction, and we find the cases distinguishable.

In *Millis*, the defendant's conviction of illegal possession of liquor, a traffic offense, was based on her arrest as a passenger, seated in the middle of the front seat of a parked car. The arresting deputy testified he found two open cans of beer on the front floor of the car and issued arrest tickets to the men sitting on either side of the defendant, believing that each of them was in possession of a can of beer; each of these men pleaded guilty to separate charges. Defendant testified that the beer had not been in her possession. The *Millis* court concluded that the evidence did not meet the standard for application of constructive possession, that the defendant had the immediate and exclusive control of the area where the items allegedly possessed were situated, since (1) beer cans on the front floor of the car could have been the possession of any one of three persons; (2) the only specific evidence in the record was that the beer cans were not in the possession of the defendant; and (3) the pleas of guilty by the two men in the front seat negatived the possession charge as to the defendant, rather than supporting her conviction. Further, the evidence did not sustain conviction on the basis of legal accountability, since the record was barren of any evidence of intent, or of any facts from which such intent could be inferred. Here, by contrast, the cannabis could have been in the possession of one or both of the defendants and, as the quoted passage from *Burke* references, the rule that possession must be exclusive does not mean that possession may not be joint. In this case there was no specific evidence that the cannabis found in the wheel well of the station wagon was not in the possession of the defendant.

In *Howard*, the State acknowledged that constructive control was not an issue and that actual possession must be proved to sustain the defendant's conviction of possession of more than 30 and less than 500 grams of marijuana. On review, *Howard* held that the State had

not sustained its burden of proof as there was no evidence of actual possession by the defendant where the testimony revealed only that (1) defendant was one of three persons seated on a bed in a motel room, (2) there was some marijuana there, and (3) defendant was closest to it. In this case, the State does not concede, as it did in *Howard*, that actual possession must be proved.

The *Day* court found no evidence to support a finding that defendant actually exercised control of about 450 grams of cannabis found in a grocery sack beneath the legs of one of the six passengers riding in the car owned and driven by defendant, the woman passenger seated next to him in the front seat, where (1) prior to trial on the motion of the State, the indictments against the six other defendants were dismissed; (2) the trial court expressly held that 10.4 grams of marijuana found in the glove compartment was not in defendant's possession; and (3) there was no evidence to establish that butts found in the ashtray of the car were in fact marijuana. As against these facts, the *Day* court stated that a defendant's status as owner-driver of a vehicle does not put him into possession of everything within the passenger area when there are passengers present who may, in fact, be the ones in possession of the contraband. Here, both defendants were charged and convicted of the offense and there were other facts presented at trial which would support the inference of constructive possession.

▮ Constructive possession is a legal conclusion, derived from factual evidence, that someone who does not have physical possession of a thing in fact has legal possession of it. Evidence of control is often circumstantial and constructive possession is often determined by weighing those facts which tend to support a defendant's necessary control over the substance against those facts which demonstrate a lack of dominion and control. (See Bailey & Rothblatt, Handling Narcotic & Drug Cases secs. 52, 55, at 45, 47 (1972).) The weighing of those facts is a matter for the trier of fact, as is the evaluation of the credibility of the witnesses, whose determination is entitled to deference. (See *People v. Burke* (1985), 136 Ill. App. 3d 593, 483 N.E.2d 674 (discussing the role of inference).) It is well established that the precedential scope of a decision is limited to the facts before the court. *People v. Flatt* (1980), 82 Ill. 2d 250, 261, 412 N.E.2d 509, 515.

Suffice it to say that we consider the evidence, *in toto*, to have been sufficient for the trial court to have drawn the requisite inferences and to have concluded beyond a reasonable doubt that defendant Whalen was guilty of unlawful possession of cannabis as charged. *People v. Davis* (1965), 33 Ill. 2d 134, 210 N.E.2d 530; *People v.*

*Burke* (1985), 136 Ill. App. 3d 593, 483 N.E.2d 674; *People v. McNeely* (1981), 99 Ill. App. 3d 1021, 426 N.E.2d 296.

Affirmed.

McCULLOUGH, P.J., and SPITZ, J., concur.