THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JERRY MILAM, Defendant-Appellant.

Third District   No. 3—91—0066

Opinion filed January 30, 1992.

Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Burmila, Jr., State's Attorney, of Joliet (Terry A. Mertel and John X. Breslin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HAASE delivered the opinion of the court:

The defendant, Jerry Milam, appeals his conviction for unlawful possession of a controlled substance (Ill. Rev. Stat. 1989, ch. 56½, par. 1402(b)). We affirm.

Prior to trial, the defendant filed a motion to quash arrest and suppress evidence. At the hearing on the motion, Deputy Ken Vitek testified that on August 7, 1989, around 10 a.m., he spoke to a confidential

informant. On at least 10 previous occasions the informant had given information which Vitek had corroborated. On over 100 other occasions, the informant had given information to police.

The informant told Vitek that Edward Holmes was presently travelling to Aurora to obtain cocaine and heroin. Holmes was accompanied by a black female and a black male known as T-Boy. According to the source, the subjects would return to Joliet by first taking Route 30 through Plainfield, then following I-55 and I-80 until they came to Chicago Street in Joliet. Their car was a light blue AMC Concord with a half-vinyl top and license plate PW7922.

Vitek testified that he and other law enforcement officers set up a surveillance in Plainfield on Route 30. Around 11:35 a.m., they stopped an automobile matching the description and license number given by the informant. The defendant drove the car, while Cynthia Hudson sat in the front passenger seat and Edward Holmes sat in the right rear passenger seat. When the officers searched the car, they found a clear plastic bag containing a white powder and a clear plastic bag containing brown chunks. The bags were in plain view on the floor in front of the right rear passenger seat.

The defendant testified that on the morning of August 7, he gave Holmes and Hudson a ride to Aurora so Holmes could get some money from his uncle. When they arrived at a home that Holmes said belonged to his uncle, Holmes went inside while the other two waited in the car. About 45 minutes later, Holmes returned to the car. After the defendant put gas in his car, they began driving back to Joliet. While they were on Route 30, they were stopped by police. The police ordered the three out of the car and told them they were the subject of a drug investigation.

Following the testimony, the trial judge found that the police had probable cause to stop the car. He therefore denied the motion to quash and suppress.

The defendant and Cynthia Hudson were then tried in a joint trial. Deputy Vitek's testimony at trial was generally consistent with his testimony at the suppression hearing. Of special note was his testimony that the informant simply said that a female black and two male blacks would be in the car. He also testified that the defendant admitted to him that he owned the car.

Sergeant Harold Struthers testified that the packages were found in plain view in an area that would have been between Holmes' legs. A forensic chemist testified that the white powder in the bag weighed four grams and was 88.6% pure cocaine.

Edward Holmes testified that he had pled guilty to possession of narcotics in connection with this case. He did so in order to obtain treat-

ment for his drug problem. He had not yet been sentenced for the charge.

Holmes further testified that on the morning of August 7, he was drinking some wine when he saw the defendant and Hudson. After the defendant drank some of Holmes' wine, he said he was driving to Aurora. Holmes agreed to come along for the ride. When Holmes entered the car, he noted that it was strewn with rubbish. After they arrived in Aurora, the defendant went inside a house that was unfamiliar to Holmes. He returned a short while later. On the way back to Joliet, they were stopped by police in Plainfield. Holmes said that when he was ordered out of the car, he did not know the drugs were in it. He stated that the drugs were not his.

On cross-examination, Holmes admitted that he was a heavy drug user at the time of the offense. The defendant did not say anything about drugs during the ride, but Holmes said he wished he had something to make him high. He then changed his testimony and said he had made that statement before leaving Joliet. When the police stopped them, one of the officers said, "We got you now, Cry Baby." Holmes noted that Cry Baby was the police officers' nickname for him.

The defendant testified that he was unemployed and had a drug problem. He previously had been convicted of burglary and other theft-related felonies. He also admitted that his nickname was T-Boy. On the morning of August 7, Holmes asked the defendant to drive him to Aurora so Holmes could get some money from his uncle. Holmes offered to pay the defendant for the ride. The defendant agreed, and the two men and Hudson then drove to Aurora. The defendant estimated that they left between 9:30 and 10:30 a.m. Holmes directed the defendant to a white house on a street named Calhoun or Calhorn. Holmes went inside the house for about a half-hour. After he came out, they drove to a gas station. Holmes tried to get change for a large bill but was unable to do so.

When the police stopped them on Route 30, one of the officers said, "We got you this time, Holmes." The defendant had no idea where the cocaine came from, but he assumed Holmes had put it there. Sergeant Struthers told the defendant that he knew the drugs did not belong to him, but he would make it hard on him if he did not reveal where they had obtained the drugs.

In rebuttal, Sergeant Struthers denied telling the defendant that he knew the drugs did not belong to him. Deputy Vitek testified that Holmes had no money on him when he was searched.

During closing arguments, the prosecutor made the following statements:

"And Mr. Holmes had said they weren't my drugs, but he pled guilty. He is a drug addict. He knows there is [sic] treatment programs available. He was trying to get some help.

\* \* \*

\*\*\* There was no testimony that [Sergeant Struthers] was looking for Mr. Holmes and drugs versus Mr. Milam and Miss Hudson for drugs. You recall the information that Sergeant Vitek received dealt with three people, two male blacks and a female black in a car. There was no testimony that their information said we are looking for Mr. Holmes and drugs. There was no testimony that it was we are looking for Mr. Milam, Miss Hudson for drugs. It was there is [sic] three people. And they are going to be coming back from Aurora. There was no finger pointed at any one person."

The jury acquitted Hudson but convicted the defendant of the charge. The defendant appeals.

The defendant first argues that the trial court erred in denying his motion to quash arrest and suppress evidence. He contends that the informant's tip and its partial corroboration did not establish probable cause for the stop.

In determining whether an informant's tip establishes probable cause, a court must examine the totality of the circumstances. (*People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147.) The officer's factual knowledge, based on his prior law enforcement experience, is relevant. (*People v. Smith* (1983), 95 Ill. 2d 412, 447 N.E.2d 809.) The reliability of a tip may also be established by its wide range of details or its corroboration by the police. (*Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317.) The trial court's decision on a motion to suppress will not be reversed unless it was manifestly erroneous. *People v. Reynolds* (1983), 94 Ill. 2d 160, 445 N.E.2d 766.

■ Here, Vitek testified that the informant had given reliable information on at least 10 occasions. The police spotted a car matching the informant's detailed description at a time and place consistent with the information supplied in the tip. The informant correctly stated that Holmes, another black man, and a black woman were in the car. Based on the informant's past record, the number of details in the tip, and the corroboration of those details by the police, we find that the trial court's denial of the motion to quash and suppress was not against the manifest weight of the evidence.

The defendant next argues that he was not proved guilty beyond a reasonable doubt. He contends that the State failed to establish that he

possessed the cocaine, because it was found near Holmes on the floor of the back seat.

■ In order to be convicted of possession of a controlled substance, the defendant must have had knowledge and control of the substance. (*People v. Briggs* (1983), 112 Ill. App. 3d 979, 446 N.E.2d 305.) Knowledge is seldom susceptible of direct proof. (*People v. Whalen* (1986), 145 Ill. App. 3d 125, 495 N.E.2d 122.) Accordingly, it may be inferred where the substance is found on premises under the defendant's control. (*People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361.) Control may be actual or constructive, and constructive possession may be inferred from the defendant's exclusive control over the premises where the substance is found. *People v. Hester* (1980), 87 Ill. App. 3d 50, 409 N.E.2d 106.

Although it has been said that possession must be exclusive, that does not mean that it may not be joint. (*People v. Whalen* (1986), 145 Ill. App. 3d 125, 495 N.E.2d 122.) Thus, the mere access by others to an area in which drugs are found will not defeat a charge of constructive possession. (*People v. Gallagher* (1990), 193 Ill. App. 3d 566, 550 N.E.2d 255.) Moreover, the driver of a car is not deprived of immediate and exclusive control of the interior simply because he also has a passenger. (*People v. Turnbeaugh* (1983), 116 Ill. App. 3d 199, 451 N.E.2d 1016.) On review of a conviction, a court must view all of the evidence in the light most favorable to the State in order to determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

■ Here, the defendant admitted that he owned the vehicle. Officers Vitek and Struthers testified that the cocaine was in plain view in the rear of the car. Holmes testified that he neither owned the cocaine nor saw it. Even if the jurors did not believe him, they could have concluded that Holmes and the defendant had joint control of the cocaine. Moreover, the defendant testified that Holmes had a large bill on him that the gas station could not change. The police, however, did not find any money on Holmes when he was searched. This and other factors raised questions about the defendant's credibility. Viewing the evidence in the light most favorable to the State, we hold that a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.

The defendant next argues that he was denied a fair trial because Holmes testified and the prosecutor argued that Holmes pled guilty to receive drug treatment. He alleges that these statements indicated that the defendant might receive drug treatment if he was convicted. He therefore concludes that the consequences of a guilty verdict were diminished in the jurors' eyes.

■ The defendant objected to Holmes' testimony on the grounds of relevancy, not because of any implications it might have for the defendant's punishment. He did not object to the prosecutor's statement, nor did he mention either statement in his post-trial motion. Accordingly, the issue is waived. *People v. Shumate* (1981), 94 Ill. App. 3d 478, 419 N.E.2d 36.

Where an issue has been waived, the conviction will only be reversed if plain error has occurred. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Plain error is defined as error occurring in a trial where the evidence was closely balanced, or where the error was of such magnitude as to deny the defendant a fair trial. (*People v. Whitehead* (1987), 116 Ill. 2d 425, 508 N.E.2d 687.) Here, based on our foregoing discussion of the facts, we find that the evidence was not closely balanced. Moreover, Holmes testified that he had not yet been sentenced. Although he and the prosecutor stated that he had pled guilty to receive treatment, neither of them said he would not also receive some form of punishment. It is unlikely the jury would draw any inferences about the defendant's punishment based on these statements. Accordingly, we find that the defendant was not denied a fair trial, and therefore, plain error did not occur.

■ The defendant lastly argues that he was denied a fair trial because the prosecutor knowingly misled the jurors in closing argument. He bases his argument on the fact that Vitek testified at the suppression hearing that he had been told that Holmes would obtain drugs while accompanied by a black male and female. Since the prosecutor knew this testimony, the defendant further argues, she should not have told the jury that the police were not looking for any particular person when they stopped the car.

The defendant did not raise this issue at trial or in his post-trial motion. Accordingly, the issue is waived. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Moreover, the gist of the prosecutor's argument was that the police were not looking for Holmes and the drugs to the exclusion of the other two suspects. That statement is consistent with Vitek's testimony at trial and at the suppression hearing. Accordingly, plain error did not occur.

The judgment of the circuit court of Will County is affirmed.

Affirmed.

BARRY, P.J., and STOUDER, J., concur.