NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180048-U

NO. 4-18-0048

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 8, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| ROBYN R. BERRY, | ) | No. 15CM362 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Mark A. Fellheimer, |
| | ) | Judge Presiding. |

---

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court did not err in denying defendant's motion to suppress her statement to the police officer admitting the contraband found during a search of her vehicle was hers when she testified at trial admitting the same.

¶ 2   In an October 2017 bench trial, defendant was convicted of unlawful use of a weapon and unlawful possession of a weapon without a valid Firearm Owner's Identification (FOID) card. The weapon, a stun gun or taser, was found in defendant's vehicle during a search at the scene of a traffic stop. In this direct appeal, she challenges her convictions, claiming (1) the statute under which she was convicted of unlawful use of a weapon had been declared facially unconstitutional, and (2) the trial court erred in denying her motion to suppress her admission that the stun gun was hers. After our review of the issues presented, we vacate defendant's conviction for unlawful use of a weapon and affirm her conviction for unlawful possession of a weapon without a valid FOID card.

¶ 3                                    I. BACKGROUND

¶ 4          On November 24, 2014, as a result of a traffic stop, police searched defendant's vehicle and discovered a taser or stun gun in the center console. On September 21, 2015, the State charged defendant with two counts: count I alleged she committed the offense of unlawful use of a weapon (720 ILCS 5/24-1(a)(4) (West 2014)) when she knowingly carried or possessed in her vehicle a pink stun gun at a time when she was not upon her own abode, legal dwelling, or fixed place of business, nor upon another's land or legal dwelling as an invitee; and count II alleged she committed the offense of unlawful possession of a firearm without a requisite FOID card (430 ILCS 65/2(a)(1) (West 2014)) when she knowingly possessed a stun gun without having in her possession a valid FOID card previously issued in her name by the Department of State Police under the provisions of the Firearm Owners Identification Card Act.

¶ 5          According to the officer's report, the dashcam video recording of the traffic stop, and the testimony presented at the hearing on the motion to suppress and the bench trial, the charges stemmed from the following. At approximately 10 p.m., on southbound Interstate 55, Illinois State Police Trooper Eric Greenlee observed defendant's vehicle exceeding the speed limit at 87 miles per hour. Trooper Greenlee pulled out and began to follow defendant's vehicle. Because defendant slowed down, Greenlee decided he was not going to conduct a traffic stop. However, when he passed defendant, he noticed her high beams were on. This was the third violation he observed, as her vehicle was also travelling in the left lane. He decided to effectuate a traffic stop, which was audio and video recorded by the officer's dashcam.

¶ 6          Greenlee approached the passenger's side window and noticed the presence of a front seat passenger, Dontae Olivier, and an odor of alcohol and cannabis emanating from the vehicle. Olivier said he had been drinking but both passengers denied the presence of cannabis.

The trooper asked if a dog would alert on anything during a search of the vehicle. The passengers said no.

¶ 7          Greenlee ran a LEADS search and discovered Olivier had an outstanding warrant. Greenlee arrested Olivier and gave defendant directions to the jail. He told defendant he would be issuing her a few citations and asked her to "sit tight."

¶ 8          Illinois State Trooper Josh Vanausdoll arrived to assist Greenlee with the search of the vehicle incident to Olivier's arrest and on the suspicion of the presence of cannabis. Officers found a pink stun gun in a black Velcroed sheath in the center console of the vehicle; no other contraband was found. Greenlee's report states: "I asked [defendant] about the stun gun; [she] stated it was received upon completion of a self-defense class." Greenlee reported defendant did not have a valid FOID card. He stated he arrested her for aggravated unlawful use of a weapon. She was handcuffed and placed in the front seat of the patrol car. He did not mention in his report whether defendant was Mirandized.

¶ 9          On February 23, 2016, defendant filed a motion to suppress "all items seized," claiming the search and seizure violated the fourth amendment to the United States Constitution (U.S. Const., amend. IV), which applies to the states under the fourteenth amendment (U.S. Const., amend. XIV), in that, *inter alia*, (1) the police conducted a warrantless search of the vehicle, which yielded defendant's pink stun gun, (2) defendant was unreasonably and unjustifiably seized in violation of *Terry v. Ohio*, 392 U.S. 1, 22 (1968), and (3) the officers did not have probable cause or consent to conduct the search.

¶ 10          The trial court conducted a hearing on defendant's motion to suppress on May 19, 2016. We do not have a report of proceedings or a transcript from the hearing, but the parties have submitted an agreed bystander's report. According to this report, Greenlee testified he "informed

the defendant that he smelled raw and burnt cannabis inside her vehicle and stated that he was going to perform a search." After finding the stun gun, Greenlee said he "confronted the defendant about the stun gun and determined that defendant did not have a FOID card." Greenlee could not get the stun gun to operate at the scene, but he was able to later charge it at headquarters and found it emitted a charge.

¶ 11 The May 19, 2016, docket entry indicates (1) Greenlee testified for defendant, (2) the recorded dashcam video was admitted into evidence by stipulation, (3) the State presented no evidence, and (4) the court took the matter under advisement.

¶ 12 On May 31, 2016, the parties convened for the trial court's ruling on defendant's motion to suppress. Again, we do not have a report of proceedings or a transcript of the hearing, but the parties have provided an agreed bystander's report. The bystander's report indicates the trial court first summarized Greenlee's testimony. Part of that summary included the basis for Greenlee's search of the vehicle: "he performed a search based on the odor of cannabis emitting." After finding the stun gun in the center console, Greenlee "placed the defendant under arrest."

¶ 13 According to the bystander's report, the trial court denied defendant's motion to suppress, finding as follows:

> "[T]he trooper had a reasonable, articulable suspicion to initially pull the vehicle over and perform a Terry stop and thereafter, a search of the vehicle based on the odor of cannabis emanating from the vehicle. The trooper did not prolong the stop based on the time it took to process the passenger on a warrant and that the cannabis odor was present from inception. The entire encounter was captured on audio/video recording."

¶ 14        At the bench trial on October 24, 2017, Greenlee testified as to the events as summarized above. During his testimony, the prosecutor asked if he recalled "if the defendant made any statements to [him] regarding whose stun gun that was." Greenlee said yes. Defense counsel objected and asked to *voir dire* Greenlee on a "possible *Miranda* issue." During this examination, Greenlee was asked about his conversation with defendant regarding ownership of the stun gun. Greenlee could not recall whether defendant was in his squad car or the assisting squad car at the time, but he believed she was "in one of those two places." He could not recall if she was in the front or back seat. He said defendant had not been arrested at that point. When asked if defendant was in custody, Greenlee stated he did not believe she was "in cuffs." The following exchange occurred:

"Q. And was she free to leave?

A. She was certainly detained.

Q. And at that point she was not free to leave, and in your view she had been detained?

A. She was detained, yes."

¶ 15        Defense counsel claimed defendant should have been Mirandized since she was detained. The trial court explained the question was not whether defendant was detained but whether she was subject to custodial interrogation. The prosecutor argued the situation did not rise to the level of custodial interrogation. The court stated, "[I]t is also clear that this would qualify as interrogation. Certainly, there [are] questions being asked of somebody in relation to this alleged stun gun." However, "under the limited facts," the court "can't find that it [was] custodial." The court overruled defendant's objection to the testimony but indicated it would revisit the issue if

"things turn differently" with the presentation of evidence that defendant was "placed into restraints."

¶ 16          Greenlee's trial testimony continued. He said he asked defendant whose stun gun it was. He said defendant admitted it was hers; she got it in a self-defense class. The State rested.

¶ 17          Defendant testified she received the stun gun at a self-defense class a few years prior. She had it in the bottom of her center console in her vehicle with other miscellaneous items. The bottom of her console is accessed by raising the covers of two layers of storage trays. She agreed with counsel's characterization that it had "been rattling around in the bottom of this center console" for two years. She had never charged the stun gun and had forgotten it was there. She was not aware she was required to have a FOID card to possess it. She said she had never tested it or used it on anyone.

¶ 18          Defendant asked to admit Greenlee's dashcam video of the traffic stop. As part of our review, this court reviewed the video and found it consistent with the parties' representations of the same.

¶ 19          In announcing its ruling after trial, the trial court indicated it had watched the dash cam recording three times. After considering the evidence and arguments of counsel, the court found defendant guilty of both counts.

¶ 20          In January 2018, the trial court conducted the sentencing hearing. The court first considered defendant's motion for a new trial, which claimed the State failed to sufficiently prove defendant had access to the weapon. The court denied defendant's motion and proceeded to sentencing. The State presented no evidence in aggravation.

¶ 21          Defendant testified she obtained a finance degree from Bradley University but she was not working in her field of study because it was "very difficult to find a job with a background,

a criminal firearm background; no one will hire [her]." She was working in the financial area before this case, but she now is employed as a home care aide for a terminally ill cancer patient. She said this has created a financial hardship for her and her two children. She testified she has no criminal history. She has since obtained her FOID card and concealed carry registration.

¶ 22　　　　After considering defendant's testimony, the recommendations of counsel, and defendant's statement of allocution, the trial court sentenced defendant to 12 months' conditional discharge on her conviction for unlawful use of a weapon (count I) and 12 months' court supervision on her conviction for unlawful possession of a firearm without a FOID card (count II).

¶ 23　　　　This appeal followed.

¶ 24　　　　　　　　　　　　　　　II. ANALYSIS

¶ 25　　　　Both parties agree, in light of our supreme court's decision in *People v. Webb*, 2019 IL 122951, defendant's conviction on count I for unlawful possession of a stun gun must be vacated. In *Webb*, the supreme court ruled section 24-1(a)(4) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/24-1(a)(4) (West 2014)), which prohibits the carriage or possession of stun guns and tasers, was facially unconstitutional under the second amendment. *Webb*, 2019 IL 122951, ¶ 21. A conviction under a facially unconstitutional statute must be vacated. *In re N.G.*, 2018 IL 121939, ¶ 37. Accordingly, we agree with the parties and vacate defendant's conviction on count I for unlawful possession of a stun gun.

¶ 26　　　　Defendant also claims the trial court erred in denying her motion to suppress statements she made to the police when she was unreasonably detained and interrogated without the officers advising her of *Miranda* warnings. Although typically a bifurcated standard of review applies when reviewing a ruling on a motion to suppress, the only question before us here is a question of law. See *People v. Sadeq*, 2018 IL App (4th) 160105, ¶ 49 (When reviewing a ruling

on a motion to suppress, a trial court's findings of fact are reviewed under a manifest-weight-of-the-evidence standard, while the court's conclusions of law are reviewed *de novo*.) Both sides agree our standard of review in this case is *de novo*. *Id.*

¶ 27 Defendant filed a motion to suppress requesting that her statement—her admission that the stun gun was hers—should have been precluded from trial because it was obtained as a result of an illegal search and seizure. We disagree.

¶ 28 Defendant voluntarily testified at trial that the stun gun was indeed hers. The record does not indicate she was coerced or compelled into so testifying. Greenlee's testimony that defendant told him it was her stun gun provided no new information to the trier of fact. Defendant took the witness stand and testified she had received the stun gun in a self-defense class approximately two years earlier. Her admission at trial nullified any claim that her same statement to Greenlee was wrongfully obtained. As our supreme court stated, "[I]t generally has been held that if a defendant takes the witness stand and admits in substance matters contained in a confession or statement [s]he has given the police, this testimony will be considered to have waived or made harmless any error that may have occurred in the admission of the confession or statement." *People v. Auilar*, 59 Ill. 2d 95, 100 (1974).

¶ 29 Further, even without her admission of ownership, the State could have sufficiently proved defendant possessed the stun gun simply by proving it was found on defendant's "premises," in a compartment in a vehicle driven, registered, and owned by defendant. See *People v. Whalen*, 145 Ill. App. 3d 125, 129-30 (1986). If the defendant is driving a motor vehicle, one may infer that she controls the vehicle and everything in it (*People v. McNeely*, 99 Ill. App. 3d 1021, 1024 (1981)), and if contraband was found in the vehicle, that fact alone will support a further inference that the defendant knew of the contraband and constructively possessed it (*People*

*v. Milam*, 224 Ill. App. 3d 642, 647 (1992)), absent other facts or circumstances creating reasonable doubt (*Whalen*, 145 Ill. App. 3d at 129; *People v. Chavez*, 327 Ill. App. 3d 18, 26 (2001)). Defendant presents no other facts or circumstances to create reasonable doubt.

¶ 30   For these reasons, defendant cannot demonstrate prejudicial error in the trial court's denial of her motion to suppress.

¶ 31                              III. CONCLUSION

¶ 32   Consistent with our decision above, we vacate defendant's conviction of unlawful use of a weapon governed by section 24-1(a)(4) of the Criminal Code (720 ILCS 5/24-1(a)(4) (West 2014)) and the corresponding sentence. We otherwise affirm the trial court's judgment.

¶ 33   Affirmed in part and vacated in part.